UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Peter J. Koines,

                    Plaintiff,          CV-04-3578 (CPS)

        - against -                     MEMORANDUM
                                        OPINION AND ORDER
Jo Anne B. Barnhart,

                    Defendant.

----------------------------------------X

SIFTON, Senior Judge.

    Peter J. Koines brought this complaint on August 19, 2004,

against Jo Anne B. Barnhart, the Commissioner of Social Security

("the Commissioner") seeking review of a denial of disability

benefits pursuant to 42 U.S.C. § 405(g).  Presently before the

Court are the parties' cross-motions for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c).  For

the reasons that follow, the defendant's motion is granted and

the plaintiff's is denied.

                            Background

    The following facts are drawn from the pleadings and the

administrative record, filed as part of the Commissioner's

answer.  *See* 42 U.S.C. § 405(g).  They are undisputed except

where noted.

    Peter Koines was born on November 13, 1951 and was 37 at the

date he was last insured.  (Administrative Record [Hereinafter

"AR"] 114.)  Koines is a high school graduate and worked as a

police officer with the New York City Police Department from 1972 to 1982. (AR 123-24.)

On January 3, 1982, Koines fell on the job while attempting to make an arrest, injuring his right leg and back. (AR 124.) He was taken to the emergency room and came under the care of Dr. Stanley Ross, an orthopedist. (AR. 134-35.) Koines returned to work at full duty on April 12, 1982, continuing treatment with Dr. Ross, but retired at the end of the year because his injury left him unable to perform the normal duties of a policeman. (AR 125, 200.)

Koines insured status expired on December 31, 1989,[1] yet he did not file a claim for disability relief until May of 1994. (AR 200-05.) In his application, Koines wrote, "The most recent condition that is the real reason for this disability claim in an Arthritic Left hip . . . . The hip is basically useless to any physical or athletic activity. . . . The reason for my current request for disability is based mainly on the current hip condition that has magnified the already existing and disabling back condition." (AR 200-05.) Koines further stated that although he had visited doctors in 1982 to receive treatment for his back, he had not had medical treatment until his hip condition became severe in November 1993.[2] (AR 205.) At the

---

[1] To be entitled to benefits, Koines must establish onset of the disability prior to the date his insured status expires. 42 U.S.C. § 423(a)(1).

[2] At the hearing before the ALJ, Koines testified that he had

(continued...)

hearing, Koines testified that prior to 1989, he never felt that he qualified for disability benefits. (AR 162.) It was only after his "hip went out" -- after he was no longer insured -- that he sought disability benefits. (AR 162.) In September 1994, Koines had hip replacement surgery. (AR 134, 863.) Koines testified at the hearing that he also suffered knee problems "subsequent to the hip." (AR 863.) Shortly after the surgery, Koines' surgeon observed that he "walked with no limp" and "has virtually no pain." (AR 68.)

Koines' claim was denied initially and on reconsideration. The claim was assigned to an Administrative Law Judge ("ALJ"), who after a hearing, issued an unfavorable decision on March 25, 1996. The Appeals Council affirmed the decision, and on November 25, 1997, Koines filed a complaint in this Court, *Koines v. Apfel*, CV-97-6976, seeking review of the denial of benefits. Prior to briefing, I remanded the matter by stipulation of the parties for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

A second unfavorable decision was issued by the ALJ on July 19, 1999, and the Appeals Council again affirmed. Koines filed a second complaint in this Court, *Koines v. Commissioner of Social Security Administration*, 00-6792. On November, 28, 2001, I again remanded the matter to the Commissioner for further proceedings

---

(...continued)
received treatment from Dr. Ross every year from 1982 to the present. (AR 855.)

and consideration of evidence of retrospective diagnoses subsequent to 1989, previously deemed irrelevant by the ALJ. (AR 669-70.)

After remand, the ALJ held additional hearings and again found that Koines was not disabled. The Appeals Council affirmed, and Koines filed the present action in this Court.

## Discussion

An individual may obtain district court review of any final decision of the Commissioner of Social Security to which that individual was a party pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). *See Raitport v. Callahan*, 183 F.3d 101, 103 (2d Cir. 1999). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

When reviewing the decision of an ALJ, it is not the Court's "function to determine *de novo* whether [plaintiff] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). Instead, the Court must determine whether the Commissioner's findings "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Id.* (qupting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means

such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." *Richardson v. Perales*, 402
U.S. 389, 401 (1971) (internal quotation marks and citation
omitted).

In order to qualify for Social Security Disability benefits,
one must be both disabled and insured for disability benefits as
defined by the Social Security Act. 42 U.S.C. § 423(a)(1)(A) &
(C); 20 C.F.R. § 404.101, 404.120, & 431.315(a). The last date
that a person meets these requirements is commonly referred to as
"the date last insured." The Social Security Act defines
"disability" in relevant part as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months." 42 U.S.C.
§§ 416(i)(1) & 423(d)(1)(A).

A five-step sequential evaluation must be performed pursuant
to 20 C.F.R. § 404.1520 to determine disability. *See Brown v.
Apfel*, 174 F.3d 59, 62 (2d Cir. 1999). First, the Commissioner
considers whether the claimant is performing substantial gainful
employment. If the claimant is not, the Commissioner determines
whether the claimant has a "severe impairment" which
"significantly limits [claimant's] physical or mental ability to
do basic work activities." 20 C.F.R. § 404.1250(c). If such
impairment does exist, the SSA determines whether it meets or
medically equals a listed impairment contained in Appendix 1 of

the regulations, which would require a determination of
disability.  If not, the Commissioner then determines claimant's
"residual functional capacity" to perform his or her past
relevant work.  Finally, if the claimant is unable to perform his
or her past relevant work, the Commissioner must determine
whether he or she can perform any other work.  In conducting
these inquiries, the Commissioner must consider: 1) objective
medical facts and clinical findings; 2) diagnoses or medical
opinions based on such facts; 3) subjective claims of pain or
disability; and 4) the claimant's educational and vocational
background and age.  *Id.*  The claimant bears the burden of
proving that he is unable to perform his past work.  *Curry v.
Apfel*, 209 F.3d 117, 122-23 (2d Cir. 2000).  The burden then
shifts to the Commissioner to prove that there is other gainful
work that the claimant can perform.  *Id.*

In the present case, the ALJ resolved Koines' claim at the
fifth step.  Although Koines had proven that he could not work as
a policeman, at the time he was last insured for disability
benefits, Koines was capable of performing sedentary work.[3]  (AR.
663-64.)

Koines challenges two aspects of the ALJ's decision.  First,
Koines contends that the ALJ failed to properly apply the
treating physician rule.  Second, Koines contends that the ALJ

---

[3] "Sedentary work" involves only occasional standing and walking,
the lifting of no more than 10 pounds at a time, and the occasional
lifting and carrying of light objects.  *See* 20 C.F.R. § 404.1567(a).

erroneously failed to credit his testimony concerning his symptoms.

Treating Physician Rule

The Social Security regulations instruct that "a treating source's opinion on the issue(s) of the nature and severity" of a claimant's impairment will be given 'controlling weight' if the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2); *see Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).[4] The ALJ is not, however, required to defer to a treating physician's legal conclusion that a claimant fits within the statutory definition of "disabled." 20 C.F.R. § 404.1527(e); *Jefferson v. Barnhart*, 01 Civ. 11323, 2004 WL 637957, at *12 (S.D.N.Y. Mar. 31, 2004) (collecting cases); *Mollo v. Barnhart*, 305 F. Supp. 2d 252, 261 (E.D.N.Y. 2004).

The difficulty the ALJ faced in assessing Koines' claim was that Koines sought to prove that he was disabled as of December

---

[4] Where the Commissioner does not give controlling weight to the treating physician's opinion, she must consider certain factors to determine how much weight the opinion deserves, and set forth the reasons for the weight assigned. 20 C.F.R. § 404.1527(d)(2). These factors include: 1) the frequency of examination and the nature, length, and extent of the treatment relationship; 2) the evidence in support of the treating physician's opinion; 3) the consistency of that opinion with the record as a whole; 4) whether the opinion is from a specialist; and 5) other factors brought to the Commissioner's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

31, 1989 -- the date he was last insured -- using medical evidence obtained long after that point.  Further compounding the difficulty was that Koines' back problem had worsened, and he had developed hip problems after his insured status expired.  Because of these changes in his condition, evidence of Koines' physical capabilities in 2002 were relevant to, but of diminished value with respect to his capabilities in 1989.

In an effort to prove his limited functional capacity in 1989, Koines submitted the diagnoses of three treating physicians: Dr. Ross, who had treated him both shortly after his initial back injury, and during the 1990's, Dr. Harwin, who had treated Koines for his hip problems in the 1990's, and Dr. Alperovich, who treated Koines for a three-month period in 2002.[5]

Ross summarized Koines' past treatment and stated that he had last seen him on September 11, 2002, at which time Koines "complained of back pain radiating into the left leg."  (AR 681.) Ross provided the following diagnosis:

> The patient has permanent residuals of lumbosacral sprain with disc herniation, spinal stenosis, facet arthritis, lumbar radiculitis with weakness in both lower extremities on a continuous basis since 1982 until the present time.  He ambulates with a cane and wears a back support.  This patient has been totally disabled from work from 1982 until the present time.

---

[5] Koines claims that Alperovich treated him for a three year period, (Plaintiff's Memo. 23), but his citation to the record indicates that he saw Alperovich for only a three month period.  (AR. 685.)

(AR 681.)[6]

Koines also submitted a "Multiple Impairment Questionnaire" from Dr. Ross, which was filled out some time on or after September 11, 2002. (AR 700.) On that form, Dr. Ross indicated that, Koines suffered severe limitations in his ability to lift and carry weight, and to sit and walk.[7] (AR 702-03.) Dr. Ross left blank the portion of the questionnaire asking him to estimate when "the earliest date that the description of symptoms and limitations in this questionnaire applies." (AR 706.) Nor did Dr. Ross provide additional evidence or medical opinion concerning Koines' functional limitations as of December 31, 1989, the relevant point for determination of disability.

Similar problems plagued the "Multiple Impairments Questionnaire" provided by Dr. Steven Harwin, the orthopedist who treated Koines' hip. In 2002, Harwin opined that Koines could never lift objects weighing zero to five pounds, could sit for zero hours in a day, and stand for zero hours in a day. (AR 711-

---

[6] In progress reports to the New York State Compensation Board in late 1982, however, Dr. Ross had repeatedly stated that Koines' injury would not lead to permanent partial or total loss of function, that vocational rehabilitation was not needed, that he could identify no factors delaying Koines' recovery, that Koines' could perform "light duty," and that Koines disability was only temporary and partial. (See AR 80; 491-94; 661.)

[7] Highlighting the difficulty in determining disability in 1989 based on Koines condition in 2002 is illustrated by the fact that at the hearing, Koines testified that he had ridden in a car from New York to Florida and back in 1986, (AR 117), and driven from New York to Pennsylvania several times in 1988 and 1989. (AR 118.) According to Dr. Ross's diagnosis, these trips likely would not have been possible in 2002.

12.)  But when asked for the "earliest date that the description
of symptoms and limitations in this questionnaire applies," Dr.
Harwin stated "May 1994."  (AR 715.)  Contrary to Koines
assertions, Dr. Harwin did not provide an opinion as to Koines'
functional capacity during the relevant time period at all.

Dr. Alperovich apparently did not complete an impairment
questionnaire.  He, like Dr. Ross, offered his opinion that
Koines had been disabled since 1982.  (AR 685.)  The ALJ did not
give controlling weight to either Dr. Ross's or Dr. Alperovich's
opinion that Koines was "disabled," in relevant part because they
were not supported by medical opinions concerning Koines'
functional limitations in 1989 and consisted solely of the
doctors' conclusions of law.  (AR 661 (citing *Segarra v. Apfel*,
58 F. Supp. 2d 26, 33 (E.D.N.Y. 1999) (holding that treating
physician's legal conclusions that claimant is disabled is not
controlling).)  Koines had submitted clinical findings of his
functional limitations as of 2002, along with Dr. Ross's and Dr.
Alperovich's opinion that Koines met the statutory definition of
"disabled."  But there was no medical opinion concerning the
extent to which the functional limitations observed in 2002
existed in 1989, and there was therefore no evidentiary support
for Dr. Ross's and Dr. Alperovich's opinions that Koines'
functional limitations rendered him disabled in 1989.[8]

_____

[8] *See Estok v. Apfel,* 152 F.3d 636, 638 (7th Cir. 1998)
(retrospective diagnosis must show more than mere fact that claimant
suffered from a disease at the relevant time; retrospective diagnosis

(continued...)

Koines argues that the doctors' opinions were supported by
CAT scans taken in 1982 and 1984, and an MRI taken in 1998.
Although these tests verified that Koines suffered from back
ailments, they by themselves are not evidence of Koines'
functional limitations in 1989.[9]  Nor does the report cite to any
tests performed on or around December 31, 1989,[10] or any medical
opinions concerning his functional limitations at that time.

In sum, the only relevant medical opinion with respect to
Koines' condition as of 1989 was Dr. Ross's and Dr. Alperovich's

---

[8](...continued)
must show that claimant was unable to engage in gainful activity by
reason of impairment); *Potter v. Secretary of Health & Human Servs.*,
905 F.2d 1346, 1349 (10th Cir. 1990) ("A retrospective diagnosis
without evidence of actual disability is insufficient.").
    Koines does not contend that the ALJ erred in failing to more
fully develop the factual record on this point.  The last time Koines'
claim was before this Court, it was remanded for consideration and
submission of precisely this sort of evidence.

[9] Dr. Ross reported that the CAT scan from 1984 revealed "disc
bulges." (AR 59, 84, 402.)  The MRI was taken in 1998, after Koines'
reported that his back pain had worsened and after his insured status
had expired.  (AR 402-03.)  The MRI revealed "disc herniation," which
indicated that Koines' back condition had deteriorated since 1984  (AR
60, 402-03.)  No MRI was made during the period that Koines was
insured, and Dr. Ross offered no opinion concerning whether the
changes revealed in the MRI occurred before or after Koines' insured
status expired.

[10] It is not entirely clear from the record whether Koines was
receiving medical treatment from Dr. Ross during this period.  As
noted, in his application for benefits, Koines stated that there was a
substantial gap in his treatment during the late 1980's and early
1990's.  *Cf. Ratliff v. Barnhart*, 92 Fed.Appx. 838 (2d Cir. Mar. 18,
2004) ("Here the ALJ was justified in discounting Dr. Adelson's
opinion.  Dr. Adelson diagnosed Ratliff as suffering from left leg
edema in 1987, but did not see Ratliff again until 1995, well after
the end of Ratliff's insured period.  Only in 1997 did Dr. Adelson
opine that Ratlif's condition limited her ability to stand, walk, and
move.").

- 12 -

conclusory opinions that Koines was "disabled." Yet, a treating physician's conclusory statement that a claimant is "disabled" or "unable to work" is simply not entitled to the deference that medical diagnoses receive. *Macera v. Barnhart*, 305 F. Supp. 2d 410, 420 (D. Del. 2004) (describing this point of law as "well-established"). The ALJ therefore correctly concluded that Dr. Ross's and Dr. Alperovich's opinions that Koines was disabled within the statutory definition in 1989 was not supported by "objective clinical findings" of functional limitations at the relevant time.


Credibility of Koines' Testimony

In determining Koines' residual functional capacity, the ALJ considered his subjective allegations of pain and functional ability. Koines testified that during "flare-ups" the pain became so severe that he could not stand, walk, or sit straight (AR. 856-57.) These flare-ups would last as long as a month at a time. (AR. 858.) The ALJ found these claims to be "not entirely credible." (Tr. 660.) Koines contends that in failing to credit his testimony, the ALJ misapplied Social Security Ruling 96-7. *See* 20 C.F.R. § 404.1529; 61 F.R. 34483-01.

A claimant's report of pain is not sufficient to establish disability in the absence of medical findings of an impairment that could reasonably be expected to produce the pain alleged. 42 U.S.C. § 423(d)(5)(A); *Barnave v. Barnhart*, 04-CV-2910, 2005

WL 1129780, at *6 (E.D.N.Y. May 13, 2005). Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings. *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999). The ALJ is allowed to accept or reject testimony, so long as that determination is supported by substantial evidence. *See Taylor v. Barnhart*, 83 Fed.Appx. 347, 350 (2d Cir. 2003).

The ALJ must consider seven factors in evaluating a claimant's subjective complaints: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, side effects, and effectiveness of any medications used to alleviate pain and other symptoms; 5) treatment other than medications used to alleviate pain and symptoms; 6) any other measures used to alleviate pain and symptoms; and 7) any other factors concerning the individual's functional limitations due to pain. 20 C.F.R. §§ 404.1529(c)(3); *Barnave*, 2005 WL 1129780, at *7.[11]

An examination of the ALJ's decision reveals that the adverse credibility finding was thoroughly reasoned in accordance with Ruling 96-7 and supported by substantial evidence. In finding Koines' testimony not credible, the ALJ noted: 1) the

_____

[11] "It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." 61 FR 34483-01.

lack of continuous treatment during the relevant period;[12] 2) a lack of proof for the need for strong prescription pain relievers;[13] 3) that Koines had previously attributed his inability to work to hip problems that only manifested after his insured status expired; 4) that Koines had admitted that during the relevant period he assisted his wife in a photography business;[14] 5) that Koines used a cane only during "flare ups"; 6) Koines was able to perform his personal needs without assistance; and 7) during the day, Koines read, watched television, went for walks in the park, and helped maintain the home.

## Conclusion

For the foregoing reasons, the defendant's motion for judgment on the pleadings is granted.  The plaintiff's cross-motion is denied.

---

[12] *Cf. Salvaggio v. Apfel*, 23 Fed.Appx. 49 (2d Cir. 2001) (claimant's failure to seek medical attention during relevant time supports finding that she was not disabled at the time, despite subjective complaints of pain)

[13] Koines contends that this basis for the ALJ's decision was in error because Dr. Ross stated in 2002 and 2004 that Koines had been prescribed Vioxx, Neurontin, Ultracet, Bextra, and Zanaflex. (*See* AR 615, 704.)  Despite request, Dr. Ross failed to provide the dosages of these medications or their side effects. (*See* AR 615, 704.)  Other forms submitted by Koines indicate that he was not prescribed many of these medications until well after 1989. (*See* AR 741.)  Nor is it apparent that Koines took these medications in 1989.  In 1982, however, Koines was prescribed only "mild muscle relaxers." (AR 79.)

[14] Koines tax returns stated that he earned $12,000 in income in 1987 from this business. (AR 148.)  Koines' work consisted of interviewing clients, making phone calls, and signing contracts. (AR 150.)

The Clerk is directed to enter judgment dismissing the complaint and to furnish a filed copy of the within to all parties.

SO ORDERED.

Dated :   Brooklyn, New York

June 14, 2005


By: <u>/s/ Charles P. Sifton (electronically signed)</u>
United States District Judge